VANCE et al. v. ROYAL CLAY MANUF'G CO. et al.

(Circuit Court, N. D. Ohio, E. D. September 1, 1897.)

No. 5,532.

1. NOVATION—SALE OF BONDS PLEDGED AS COLLATERAL—RIGHTS OF HOLDERS.
   Where bonds of a corporation, pledged as collateral security for debts of the corporation, are subsequently sold by the board of directors, the purchaser assuming and agreeing to pay such debts, the sale does not create a novation of the indebtedness, so as in any wise to affect the rights of the creditor to proceed against the corporation, or its property in the hands of a receiver.

2. PRIORITY OF LIENS—LEVY BY SHERIFF—PROPERTY SURRENDERED TO RECEIVER.
   A sheriff levied an execution on the property of an insolvent corporation, and left it in custody of the president of the corporation, who agreed to hold it for him. Subsequently a receiver was appointed by the federal court, who took possession of the property in the absence of the custodian and the sheriff, and subsequently agreed with the sheriff that, if any lien attached under his levy, and it had not been lost by abandonment, it might be asserted in the federal court. *Held*, that the judgment creditors acquired a prior lien on the property thus levied on, which had not been lost by abandonment, and which would be enforced by the federal court.

Henry M. Russell, for plaintiffs.
D. H. Hollingsworth, for defendants.

TAFT, Circuit Judge. This cause, which was begun by a bill filed by certain stockholders in the Royal Clay Manufacturing Company to set aside a deed of assignment for the benefit of the creditors of all the property of the company, made without proper authority by the president and secretary to J. Ross Alexander, and which was, by intervening petitions and by cross bill, subsequently given the form of a suit in the nature of a creditors' bill, and of one to foreclose a real-estate mortgage upon the property, comes on now to be heard upon the report of the master appointed to take evidence and find the facts and report his conclusions of law as to the amount and priorities of the claims of creditors against the property of the Royal Clay Manufacturing Company. I have examined the record with considerable care, have read all the evidence before the master,

and, after a consideration of the briefs of counsel, have reached the conclusion that in all respects the report of the master should be confirmed. The attorney for the receivers who was appointed by the court to defend the interests of the stockholders against lien and other creditors has filed a number of exceptions to the findings and conclusions of the master. It may be well to state in a summary way the issues which he has made, and the conclusions which I have reached in regard to them. Many of the claims which the master has found to be valid against the company are based on cognovit notes given by the president, A. J. Baggs, and the secretary, H. W. Rhoads. It is objected on behalf of the stockholders that Baggs and Rhoads had no special authority given to them by the board of directors to contract such obligations, and that any one receiving such notes from the president and secretary was charged with knowledge that they did not bind the company. The master finds that the board of directors was fully advised of and fully approved of the action of Baggs and Rhoads in contracting the debts, and in giving evidence of them in the form of cognovit notes. The evidence satisfies me beyond a doubt that all the directors knew that Baggs was in the habit of giving such notes for debts of the corporation, and that he had general authority to contract debts for the company in this form.

The attorney for the stockholders disputes the finding of the master as to the indebtedness of the company to the Deposit Bank of Dennison, Ohio, or to its assignee, Bailey. It seems that neither Baggs nor Rhoads made entries of the items of this indebtedness upon the books of the Royal Clay Manufacturing Company, although all interested were cognizant of the existence of a large indebtedness at one time. There is no doubt that the indebtedness does appear upon the books of the bank, and the bank-deposit book was eight times balanced without objection by either Baggs or Rhoads, and each balance showed the indebtedness which is objected to. The complaint is rested rather on the looseness with which Baggs did business than on any defect in the evidence which the bank produces of the indebtedness.

W. B. Simpson was one of the directors of the Royal Clay Manufacturing Company and one of the executive committee of the board. He indorsed much of the company's paper. The bonds of the company to the amount of $100,000 were issued by the company, but they were not all of them sold. Bonds to the par value of twenty-nine thousand dollars, with the acquiescence of the board of directors, were used by Simpson as collateral for debts of the company contracted with West Virginia banks and other creditors. These banks and other creditors now appear as holders of the bonds, and ask that their claims be allowed to the extent shown by them to be valid, and that the mortgage securing the bonds be foreclosed, so that they may derive the benefit to which they are entitled from their collateral. An exception is taken to the finding of the master in favor of these creditors on the ground that, after the bonds had been deposited as collateral with these creditors, and at the last meeting of the board of directors, these bonds, amounting to $29,000, were sold

to W. B. Simpson in consideration of his assuming the debts which they were pledged to secure. Whether this was a valid action by the board of directors or not, taken, as it was, at a special meeting, of which two of the directors had no notice, is not, it seems to me, material. Such a contract with Simpson did not create a novation of the indebtedness as between the creditors who held the notes of the company and the bonds as collateral and the Royal Clay Manufacturing Company, however it might affect the relations of Simpson and the company to the indebtedness. Hence the exception to the allowance of these claims and their priority, so far as the collateral is concerned, is overruled.

The only other exception to which it is necessary to advert is that directed to the finding of the master that certain levies of execution in favor of the Citizens' National Bank of New Philadelphia, Ohio, and S. O'Donnell and others secure to the judgment claims of these execution creditors a priority in the distribution of the proceeds of the sale of the personal property upon which the executions were levied. It is first objected that the judgments were void because rendered on cognovit notes which Baggs, as president, had no authority to make. I have already approved the finding of the master that there was authority to make such notes derived from the course of business of the board of directors, and the acquiescence of the board in Baggs' conduct of the business. It is unnecessary, therefore, to consider the question of the conclusiveness of the judgment on such notes, and whether the judgment can be collaterally attacked on the ground that there was no authority to make the notes, because the finding of this court is that there was authority, and that the debts were valid debts. The second question raised is as to the validity of the execution. The sheriff, after the deed of assignment was made by Baggs, as president, and Rhoads, as secretary, to J. Ross Alexander, trustee, and before the receiver was appointed herein, went to the yard of the Royal Clay Manufacturing Company, and, having in view all the personal property, made levies thereon. He at once notified Baggs, the president, who was in charge for the company, that he had made the levy, and put the custody of the personalty for him in Baggs, which Baggs accepted. The master finds this to be the fact on the positive statement of the sheriff and two persons who accompanied him, and Baggs does not deny it. When the receiver appointed by this court went to the premises, he found no one in charge, but he was advised by the sheriff that the sheriff had possession of the personal property, and, in order to prevent a conflict of jurisdiction, a stipulation was entered into between the sheriff and the receiver by which the receiver agreed to take possession and dispose of the goods under order of the court without prejudicing the right of the sheriff to assert any lien which this court might determine that the judgment creditors had by reason of his levies. Under the decisions in Ohio, especially those in Murphy v. Swadener, 33 Ohio St. 85, and Acton v. Knowles, 14 Ohio St. 28, the levy lost nothing of its validity from the circumstance that the sheriff placed the goods in the hands of Baggs, the president of the company, as his custodian. Baggs' temporary ab-

sence from the grounds at the time the receiver entered them is not an abandonment of his possession as custodian, and therefore there was a lawful levy on the personal property by the sheriff in force at the time the receiver took possession. The receiver agreed with the sheriff that his taking possession should not affect the validity of any lien which might have been created by the sheriff's levy and continued in force until the receiver's taking possession. The arrangement made by the sheriff and the temporary receiver is to be commended. It was a judicious compromise to avoid a conflict between jurisdictions, and certainly this court will not permit the commendable spirit of confidence which the sheriff showed in the justice and equity of this court to be made a ground for depriving him or those whom he represented of the rights in the property which had been acquired and maintained by lawful levy and subsequent official custody. The finding of the master that the judgment creditors, by reason of these levies, acquired a priority of lien, is confirmed.

The contention that the levy was at all affected by the prior assignment by the executive committee of the board of directors to J. Ross Alexander cannot be sustained. The assignment, it is practically conceded by all parties to the suit, and by even J. Ross Alexander himself, was invalid, because made without the authority of the board of directors; and, as it was invalid, and as this court has never recognized its validity, it cannot recognize it merely for the purpose of defeating the subsequent levies.

A decree for the sale of the real estate, both that not covered and that covered by the mortgage, will be entered. The property has once before been offered under a decree made before the filing of the cross bill. In view of the fact that the case has taken a somewhat new form, the prior decree for sale will be set aside, and a new decree entered. Owing to the temporary loss of all the papers in the case by an express company, to which they had been intrusted, the decision of the case has been somewhat delayed. I do not think, however, that the delay has worked any disadvantage to the parties interested, because the business outlook has so much improved that probably a later date will result in a more beneficial sale.

The new decree will first find that the assignment to Alexander was invalid; second, that the Royal Clay Manufacturing Company is insolvent; third, that the stockholders and creditors who are parties by intervening petition and otherwise are entitled to have its entire assets sold, and the proceeds applied in payment of its debts; fourth, that the mortgage to Alexander on the real estate covered by its terms is valid, that the condition thereof has been broken, and that the trustee and the beneficiaries thereof—the holders of bonds —are entitled to the relief prayed in their cross bill, to wit, the foreclosure of the mortgage, and, on a failure of the company to redeem the mortgaged premises, to a sale of the same in foreclosure. The order for sale will include both a sale of the mortgaged premises and the real estate not mortgaged. The decree will also provide for a sale of the personal property at the same time as the sale of the real estate, or within a week thereafter, within the discretion of

the receivers, upon notice by public advertisement of the sale, the extent of such advertisement to be determined by the receivers. The decree will also confirm the report of the master in all respects, and make his findings and conclusions the findings and conclusions of this court.